Good afternoon. May it please the court. Meredith Clark for the plaintiff appellant, Harry F. Marsh, and Cynthia Joy Marsh. The issue in this appeal is straightforward. Is there sufficient evidence to create a genuine issue of material fact as to whether Mr. Marsh was exposed to asbestos on the ship-owned vessels such that his exposure to asbestos was a cause, however slight, of Mr. Marsh's mesothelioma? The answer is unequivocally yes, and this court should reverse the ruling of the district court. We can only surmise what reasons the district court had for granting summary judgment because it did not provide its reasons. However, that should not concern the court today as the review of this issue is de novo and the complete written record is before you. So as I understand it, Mr. Marsh worked on lots of ships over a long career. Correct, Your Honor. He had an approximately 40-year career. So we have to connect, though, his exposure to asbestos with particular vessels, right? You can't just say generally he was. You have to connect it to specific vessels. Isn't that right? Sure, and I think his testimony does that. Okay, I was going to ask you, please point to me in his testimony where it connects it to specific vessels. So there's four defendants that are at issue in this appeal. The first defendant, Farrell, on behalf of American Export Lines, he served on four different vessels for that defendant. He presented testimony as to what his job duties were for each position for that defendant. As a wiper, he was responsible for sweeping and cleaning up asbestos-torn gaskets, torn-up packing, blankets, and loose packing. And at that quote, at that time, these products were made out of asbestos. As a junior engineer, Mr. Where is that in the record? That is a couple of different places. Record at 13110 through 13111. Okay, thank you. As a junior engineer, Mr. Marsh testified that he was in the engine room mostly and was responsible for assisting the fireman or the engineer. He specifically recalled serving as a junior engineer aboard the Berry Victory. That's at record 13124. He contended he was exposed to asbestos specifically on the Berry Victory because all those pipes and everything were covered with asbestos. That's at record 13124. He also specifically recalled working aboard the X-Smith, which was another Farrell Lines vessel as an engineer. That's at record 13124. Another vessel for Farrell was the Woodstock Victory. He presented questions about the Woodstock Victory. Question, do you contend that you were exposed to asbestos while you were working onboard the Woodstock Victory? Answer, if there was asbestos in the engine room, I was around it, I guess. Question. Okay, sorry, keep going. Do you know specifically whether the material that was in the engine room onboard the Woodstock Victory was asbestos? Answer, yes, indeedy. All had to have it. Pipes was covered and everything else in blankets around here and there. That's at record 15772. I can keep going for Farrell. Again, for the Greeley Victory, he was asked similar questions about whether he contended he was exposed to asbestos. His answer was possibly yes. But then when he was questioned, but you can't say for certain, he responded, quote, no, because you got asbestos on all those ships. Well, that's, I mean, I frankly don't think that's enough, that piece of evidence. That's my concern. If you're surmising about ships generally, well, I suppose, yes, I assume there were because there was always asbestos. I doubt that's enough. I disagree, Your Honor, because there are cases where courts have decided without even testimony from the decedent or plaintiff themselves that there was enough evidence. Is there a case that evidence of that nature is enough to connect asbestos exposure to a particular vessel? For example, in Casey v. AC Product Liability Trust, it's an Eastern District of Pennsylvania case. It was the asbestos MDL decided under Judge Regrino on August 4, 2014. The site is 2014 U.S. District Lexus 131928. The motion for summary judgment was denied in that case because in that case all the plaintiff presented was a sworn statement, and in that sworn statement it presented a list of vessels similar to how we presented the dates and service times of Mr. Marsh in this case. And then on the next page it had questions where he stated that on all of those vessels on the prior page, he was exposed in these areas of the vessels and he was exposed in these. Okay, so is that your best case? That's the best case I have in front of me right now, Your Honor, but I think what's also important to point out is the featherweight causation standard here allows a seaman to survive summary judgment by presenting even the slightest proof of causation, and that's, again, out of the Eastern District of Pennsylvania from Sloan v. United States. But don't you need medical? You have general causation asbestos. You probably find any number of experts and government publications, probably a stipulation that asbestos causes mesothelioma or asbestosis or various ailments. Certainly, it's a signature. And then we have a fact or a set of facts, which you've just recited of the times he was on a vessel or in proximity to asbestos. But what we don't have is something, some testimony or some expert report, in particular medical testimony, that proves or at least tries to meet the burden of proving causation, that this particular exposure to asbestos over this interval on this vessel caused or substantially contributed to and I'm not trying to use the buzzwords, whatever the standard, actually caused harm to the plaintiff. Where do we have that in the record? Well, I think legal causation and medical causation are going to be slightly different standards. And under medical, we do have, plaintiff has four experts in this case, one of which is a pathologist physician, Dr. Richard Craydon. And Dr. Richard Craydon reviewed the testimony of Mr. Marsh. And he also reviewed the medical records. He reviewed slides, the vessel service history, his discharges. And Ms. Cook's report, who is a marine safety expert on behalf of plaintiff. And he states in his opinion to a reasonable degree of medical probability that his malignant mesothelioma was caused by his cumulative exposures to asbestos, as outlined in his deposition testimony and summarized in this report. So we do have a medical causation expert. How is that connected to asbestos in any particular vessel, what you just read? You said cumulative. Well, that's what I was trying to say is that medical causation, there's no case law that I'm aware of that requires an expert to draw that exact distinction. The doctor looks at whether the plaintiff was exposed to asbestos and has a background exposure high enough to then cause mesothelioma. Are there any cases that, it sounds like you're almost arguing res ipsa, that if I worked on a vessel in proximity to asbestos, whether it was coating pipes or was inside walls or what have you, I need to prove nothing further that in and of itself proves that it caused my illness or substantially contributed to the illness. Is there any case that would use that type of terminology? Your Honor, I'm blanking on which case it was, but there is a case that actually equates the slight causation standard under the Jones Act as essentially res ipsa. And I'm trying to look for that, but if I find it in my notes, I'll let you know. But we did cite a case on that note. I'd also like to point out that a lot of times in the defendant's briefing, the test of frequency, regularity, intensity, and duration is used. That is the highest causation standard in an asbestos context. That's even higher than substantial factor that would be more akin to a but-for test. And here we're even lower than that with the slightest causation or featherweight standard. Can you cite a single case from our court that uses the phrase featherweight causation in an asbestos case? From the Fifth Circuit? I don't know that I have a Fifth Circuit case in front of me, Your Honor, that has reviewed the Jones Act standard and uses featherweight. But the Jones Act borrows from all circuits, and General Maritime Law is a broad body of case law, and therefore you're not limited to just Fifth Circuit case law. You can consider other circuits as well as the Supreme Court. And the Supreme Court in Rogers did delineate the featherweight standard in a FILA case. The Jones Act incorporates all law under the FILA, Federal Employer's Liability Action, and so therefore the Supreme Court issued a featherweight or slightest causation standard. The Miller Court in the Sixth Circuit expressly rejected the frequency proximity test. That was a Jones Act and a General Maritime Law because the plaintiff brought claims under the Jones Act and unseaworthiness, and in that case they decided that the plaintiff did meet the higher standard of proximate cause. They rejected frequency proximity test and declined to consider the slight causation standard because they felt that the plaintiff met the higher standard anyway. I'd like to, with a little bit of my remaining time, also go to the issue of our experts. The underlying motion was a motion for summary judgment and or motion to exclude plaintiff's experts. It doesn't identify any expert by name. It also does not identify any opinion, a specific opinion of any expert by name. In fact, I believe on the underlying papers there was approximately a page spent on excluding all four of plaintiff's experts in the alternative. The way that the district court's minute entry was entered, it states that the defendant's motion for summary judgment and or motion to exclude plaintiff's experts is granted. Again, we don't know if the district court based their ruling on exclusion of plaintiff's experts. However, it is an abuse of a distraction not to even hold any type of consideration, doubt, or inquiry into plaintiff's experts, and therefore we believe that that issue should also be reversed. In their briefing, the defendants did not challenge the qualifications or methodologies of plaintiff's experts. Instead, they only sought to exclude their opinions based on the underlying facts that they believe were insufficient. I'd also like to bring your attention to the navigation inspection circulars that are relied upon by plaintiff's experts. Marjorie Cook, who is a marine safety expert, she's also a former merchant marine herself. Her experience is in serving aboard vessels. And then plaintiff's expert Troy Corbin, who's a marine chemist. They both rely on the navigation inspection circular of May 1980, which is historical evidence and states, quote, asbestos-containing materials is believed to have been installed on all types of vessels. That's at record 13025. So I have here in the record that that circular also says, quote, the amount and type of asbestos can vary from very little to significant amounts. I'm not sure where on the record that... 13023. And my point being, of course, is that, yeah, sure, I can see some evidence that there is asbestos on all the ships, but the amount is... What if it's an insignificant amount? Well, Your Honor, as recognized by Miller in the Sixth Circuit, mesothelioma can arise from a relatively brief exposure to asbestos, and these were essentially floating power plants. Even Mr. Marsh specifically worked in the engine room, so he does have a significant amount of exposure to all of the asbestos contained in the engine room. However, it doesn't stay within the engine room. In your view, are you arguing that no matter what amount of asbestos is on any particular vessel, even if it is a very small, insignificant amount, that is sufficient evidence to find causation? Your Honor, at the time that Mr. Marsh was serving on these vessels, I think it would be hard to find a vessel that had a very tiny, insignificant amount of asbestos on the vessel. Well, your own evidence says the amount and type can vary from very little to significant amounts. But also, the same navigation circular states... Well, actually, it was number 687, states that ships were constructed between... Ships that were constructed between 1940 and 1975 used substantial amounts of asbestos. So the later circular that came out after that one clarified what they thought was even worse than it was, and all seven of these vessels at issue in this appeal were constructed prior to 1975. I see my time is up, so I'll reserve... You've reserved your final time. Yes, sir. All right. We'll hear from Mr. Lee. Good afternoon, Your Honors. Good afternoon. Judge Engelhardt, you put it a little bit differently than I had sort of formulated it myself thinking about this, but I think recips is not a bad way to put it. I think that's exactly what the appellants are asking the court to do, and that is to create really an irrebuttable presumption that anyone who served onboard a certain type of vessel during a certain period of time automatically must have been exposed to asbestos, and that it's inherently reasonable for any fact finder to conclude that asbestos exposure took place no matter the type of work, no matter how brief the period on the vessel was, no matter whether there's actual evidence of exposure, and I don't think that's the law in any of the courts, much less in this circuit. Mr. Marsh went to sea. He was shorted there by 10 years a moment ago. He was at sea for more like 50 years than 40. Started sailing in 1944, I believe, and didn't retire until 1933. Nearly five decades of service at sea aboard steamships, and just a few hundred days were aboard the vessels that were owned by my clients or their predecessors, something in the vicinity of a little less than 5% of his total sea time. One of the vessel owners, for example, the first named in the appeal, Charles Kurtz, Mr. Marsh served aboard a Kurtz vessel for a total of seven days. That's the grand total of his exposure or alleged exposure to asbestos aboard Kurtz vessels, a one-week period, with no direct evidence of any exposure having been articulated in his deposition or anywhere else in the record. Out of concern for the environment, I did not print out the docket sheet because it runs to about 50 pages, but you had something like three score defendants in this case. Mr. Marsh settled with the vast majority of those, including Likes Brothers, which was by far his longest employer, sort of omitted from all the briefing, at least on the plaintiff's side, Your Honors, was the fact that Mr. Marsh, of that roughly 50 years at sea, spent approximately 33 of those years with Likes Brothers. So this is not a case, when you think about it, and I think Your Honors are approaching this, in my humble opinion, from the correct perspective, where in the record is the evidence of actual exposure to asbestos on these particular ships, owned by these particular defendants, not evidence that he may have been exposed at sea generally, not evidence of what did the Coast Guard find, or the sort of prevailing circumstances with asbestos exposure back in the 40s, 50s, 60s, 70s, 80s, but these specific vessels, these specific employers. You know, if the case here were that Mr. Marsh had served for a few hundred days aboard these specific vessels for these specific employers, then decided, you know what, the life of a sailor is not for me. I'm going back to be a landlubber, and I'm going to become a shepherd. I'm going to become a scuba instructor. I'm going to open an ice cream shop. I'm going to do something that takes me far away from any sort of field of endeavor in which I might be exposed to asbestos. And lo and behold, he turned up with mesothelioma many years after the fact. It would be harder for me to suggest to you that my clients should be exculpated, but that's not the case we have here. Again, it's an incredibly small percentage of his service at sea that was spent aboard these particular vessels, owned by these particular employers, and there's a complete lack of evidence of direct exposure to asbestos on Mr. Marsh's part on board any of those vessels. And I think, humbly, that's why the district court granted summary judgment. I'll share in counsel's question, I don't know why written reasons were not issued. I don't know that it really makes any difference to this court. Judge Guidry could have written an incredibly lyrical, almost poetic discussion that brings in the code of Hammurabi and Planteol and every other sort of source you can imagine, and I don't think it would change the standard of review for your honors here. It would still be de novo. Counsel, do you have any specific reaction to the particular record evidence that the appellant pointed to? I do, Your Honor, and I think we've been through, in the briefs, really all of this. I can say, generally speaking, to answer your question, Judge Duncan, I think if you look at pages four through nine of our brief, we cited, I believe, everything that Mr. Marsh had to say in his depositions about his service on these particular vessels. Ms. Clark pointed to testimony at 13124, if I can get back to it, about the bar victory in the Exmouth. Well, I don't think that that was actually. I was just kind of looking for your general reactions to that. And, Your Honor, I'm sorry. Of course, I'm not going to be able to find the particular page now. It's kind of the quantum of evidence. Judge Engelhardt and I were talking about it. Is that what you need? Is that enough? Are you talking about this featherweight? Well, Judge, I'll take that in two parts. First, I think the answer is clearly it's not enough evidence. The evidence that counsel's pointing to about Mr. Marsh's description of his, and one of the jobs she mentioned particularly was his job of wiper, sort of a gopher in the engine room. And I think if you go and read the particular citation I had at the table a moment ago, that's his description of what the wiper job entails generally, sort of the general duties of the wiper. I think as you dig deeper into the testimony, the tasks that are described are not, Mr. Marsh is candid, are not tasks that are described or performed every day on every single vessel. So, you know, an effort was made in the testimony to drill down to, can you remember what you did on, for example, the Tullahoma owned by Charles Kurtz? And the answer invariably comes back, no, I can't particularly remember what I did on that vessel. Can you remember any particular activity you engaged in on that particular vessel that exposed you to asbestos? No, I can't remember. There's a great deal of, well, probably, I guess. If you look at page 1555 in the record, Mr. Marsh asked a question about, do you know whether that particular piece of insulation on that particular vessel you were working on, do you know whether that was asbestos? I guess most of the stuff was asbestos, but you can tell he's sort of talking in probabilities, possibilities. Again, he's making a candid guess, but I don't think it gets to the level of what's required when you read some of the cases. Restate, I think you've said already, but restate the totality of his service on the ships of your clans. It's a few hundred days, Your Honor. I believe it's less than 5% of his total, roughly 50 years at sea. Any of those consecutive periods, or it just sort of deviates over the course of the 50 years? Well, it's all in the earlier portion of the 50 years. In 1960, Judge, he goes to work for Lykes, and he stays. I guess he was happy at Lykes because he stays there until he retires in 1933. The service aboard our vessels is all in the late 40s and middle 50s. And he does sort of jump around, and as I say, it varies from a couple of months on this or that vessel to as little as seven days aboard the Tullahoma, the Charles Kurtz vessel. There's no transcript of the June 8, 2023, status conference. We have the minute entry that indicates that the district court's granting the motions. Was there any transcript where there was discussion of his thoughts on the matter and why these motions might have been granted? Judge, not that I'm aware of. If memory serves, I can recall that was a Zoom meeting we had, and I don't believe there was a transcript, or if there was, no one made that available to us. In terms of the featherweight causation, circling back, Judge Duncan, I can't quibble that featherweight causation is sort of the term that's always thrown around in the Jones Act context, but I think the important point to take away from a couple of this court's decisions in Schindler and Seaman are that the featherweight causation standard that may prevail under the Jones Act, that doesn't abrogate the Daubert standard, and the fact that the plaintiff's burden may be eased however much or little in a Jones Act case doesn't relieve the expert from relying on proper facts, and I think that gets to the real problem with the Cook and Corbin reports. If you look at Mr. Corbin's report, for example, and he's the one who sort of opines generally on all the dangers of asbestos that were faced by Jones Act Seaman, his opinion is, again, it's sort of like the NAVICs that have been supplied. It's a totality, and it's the last page of his report. It's 13130 in the record. He opines that over the course of Mr. Marshall's 48-year career, he would have been exposed to asbestos, and I don't know that that's seriously in dispute that over the course of his career he would have been exposed, but, again, I keep coming back to the key question being, what was the exposure on these vessels for these particular employers? The reason I think that a lot of these cases seem to come out of Ohio and Pennsylvania and the Sixth Circuit, these were just a mass of cases filed on a maritime docket in the Northern District of Ohio back in the late 80s, and they all sort of bubbled up from there. We cited a couple of the cases that were decided by the courts up there arising out of that Mardoc litigation, and I think the Feliciano case is sort of instructive, and what I would humbly submit is sort of a good way to approach this. That was a case in which the seaman alleged that he had been in service, I believe, for 152 days aboard a particular vessel, the Leilani, and he wanted to keep that vessel's owner, that defendant in the case, and said, well, you know, I was exposed to asbestos on that vessel, so therefore he can't have summary judgment, and what was ultimately decided was even with an eased standard of proof, you still need some evidence. There's got to be, it can't just be general Mr. Corbin, Ms. Cook, NAVIC circular type evidence, historical evidence that there was exposure to asbestos generally on steam-powered vessels. You need evidence that this plaintiff was exposed to asbestos, and not just any asbestos, but asbestos in a respirable form in some, however slight, sufficient concentration to cause or contribute to the disease on this particular vessel during the time that this seaman was on board, and in that Feliciano case, the Murray case reached the same result. The Jackson case reached the same result, albeit that was after a trial. That was actually throwing out a jury's verdict because they had based it on insufficient evidence, but the common thread running through all those cases was that with regard to the particular employer and the particular vessel, there was a complete dearth of evidence that there had been actual exposure. Again, not just being in the presence of asbestos, walking past and saying, well, I think that might be some asbestos insulation on that pipe over there, but asbestos in a respirable form in some sufficient concentration for that to have been found to have caused or contributed to the seaman's ultimate disease. And I think we probably said this in the briefs, but, Your Honors, I think it sort of jumped right to what is really the key question here, and that's where is the direct evidence that Mr. Marsh was exposed to asbestos on these vessels? And I looked. I actually looked through the record, went back through his deposition, even though that would have been outside the competent summary judgment record, and what I ultimately decided was I think if that testimony were there, if there were testimony of Mr. Marsh saying, yeah, I can remember being aboard the Tullahoma. My employer was Charles Kurtz, and I can remember taking all the insulation off of a boiler one day, and boy, I came out of that and it looked like I was a snowman covered in asbestos. Well, that would have been the first thing in the brief to this court. It would have been the first thing in the motion, opposition file below. The reason that you're not seeing that, Your Honors, is that that testimony simply is not there. Again, and if I sound like I'm repeating myself, I suppose I am, but if you look to our brief at pages four through nine, everything cited to the record, I think we've marshaled there all of the testimony from Mr. Marsh from his depositions that discusses in particular what his actual recollection is of his service aboard the vessel zone owned by the defendants we represent, and there's simply nothing there. The Tullahoma, he had no specific recollection of serving aboard that vessel. That's 11366 to 11367 in the record. The Bulk Lube owned by National Bulk Carriers, didn't really remember that one. That was 11352 and 11353 in the record. He served aboard the Korigua, a Chiquito vessel. He was asked about that. This is pages 11359 and 11360 in the record. He had no specific recollection of any activity leading or potentially leading to asbestos exposure while he served aboard that vessel. Talking more generally about the Farallines vessels at pages 11363 to 11365 in the record, he just recalled that he worked on the ships. It was pointed out by counsel that he had some recollection of working on one of those vessels, the Barre Victory. He does describe at some point in his testimony that he recalls having done something with asbestos on a ship whose name he could not recall, but I know it was a victory ship. Well, sort of a handy shorthand in these cases, and it's 13105 through 13108 in the record. It was one of the attachments to plaintiff's opposition, is the vessel service history. These are documents that were very meticulously compiled by plaintiff's counsel over the years in which they computed down to the day which boats these men were on, exactly when they got on, exactly when they got off, and how many days. It's been sort of an undisputed record, I think for the most part in these cases, in terms of sketching out the seaman's career. So when Mr. Barre says, well, I don't remember what ship I did that on, but I know it was a victory ship, well, we need look no further than that vessel service history to find out that he served on a number of victory ships that were not owned by any of our clients and that are not at issue in this litigation. So we get back again, I think, to almost the fundamental fairness question of if a seaman is to come in and say, you know, I can remember specifically that I engaged in an activity that exposed me to asbestos and it was on a victory ship, does that mean that a reasonable finder of fact, a reasonable jury can reach the conclusion that every single owner of victory ships on which he sailed over the course of his career can be found liable to Mr. Marsh? And I think the answer to that is clearly no. Regarding the exclusion of plaintiff's experts, I wouldn't disagree that I think the fundamental issue with the experts really is hand in glove with the issue that I've been drawing on about for the last 18 minutes and 15 seconds, the issue of a lack of specific factual testimony, specific evidence on how and when and how much asbestos Mr. Marsh allegedly was exposed to on these particular vessels owned by these particular defendants, and the lack of that factual testimony I think is fatal to the experts' opinions. They certainly can go on about the historical evidence, the general evidence, the state of the marine industry from 1940 to 1990, but in order, and that may be enough with some defendants, with some manufacturers, but when you start getting down to the real question of, all right, now we've whittled it down from 60 defendants down to four, and again I go back to the question you asked at the outset, Judge Duncan, how do we say to these four defendants, you guys are liable because you did this wrong, not generally did the marine industry do bad things, not generally were these vessels containing asbestos, but specifically what did these four defendants who owned this group of vessels do that caused or contributed to Mr. Marsh's condition? And the answer to that, after all these years of litigation and all this briefing, I think is clear that there is no evidence that ties my clients to asbestos exposure in a respirable form in any sufficient amount for him to causally link that exposure to the asbestosis and the mesothelioma of which he complains. All right. Thank you, sir. Thank you, Your Honor. Ms. Clark, do you have a vote? Thank you, Your Honors. I'd like to start with some of the cases all cited by my opponent, and just to distinguish it here quickly. The Feliciano case, the only evidence submitted in that case was a declaration by a coworker. There was no testimony by the plaintiff or the plaintiff's decedent in that case. It's not even clear from the opinion whether there was any expert evidence, and the plaintiff isn't referenced in the statement in any form or fashion. So that case, here there's deposition by Mr. Marsh himself that demonstrates his exposure. We produce expert depositions and reports. It's just a totally different circumstance than what we have here. The Bartell VAC product liability case or Murray, in that case the court granted summary judgment due to the absence of any evidence, and there was no evidence for that particular defendant or that ship at all. In that case, there was a witness list submitted that listed a list of coworkers and which vessels they could testify against for which defendant. None of those vessels listed or defendants were the defendant or vessel at issue at the time of summary judgment. Also in Jackson, that was under a higher standard since, as counsel mentioned, it was after a six-day jury trial. But that case, the court did state that evidence concerning the presence of asbestos dust throughout the ships on which the inter-party lived and worked for prolonged periods from the engine rooms where he labored was sufficient type evidence to survive a request for a new verdict. Again, moving on to Mr. Marsh's testimony. Counsel also pointed out times when defense counsel during his deposition would ask him, do you have a specific recollection on the Tullahoma of working with an asbestos product, ripping out the insulation or the packing, and he would say, I can't recall. His deposition was taken in the early 2010s, and so there was decades of time that had passed since he had served on these vessels. But at the point of redirect, he was asked, you spent three hours today listening to questions about specific recollections, didn't you? He answered, yes. And you tried to answer those honestly? Yes. Quote, but does that change any of your initial testimony about asbestos exposure? Answered, no indeedy. That's at the record at 15782. He also specifically testified, quote, I believe with all my seagoing career that I was exposed to asbestos in all these vessels that I've been served on. That's on record 15784. All of his testimony at least creates a question of material fact that should be submitted to a jury. Again, Mr. Marsh is a lay witness, and a lot of times in these asbestos cases, mesothelioma takes approximately 20 years to develop, so a lot of times the lay witnesses don't have that knowledge fresh in their hand on what they worked with on one particular day, and you rely on expert testimony. That's what our experts here are here to do. Circumstantial evidence is sufficient to get to a jury even without the direct evidence of Mr. Marsh testifying, and that has been held in multiple courts. For example, in Rogers, the U.S. Supreme Court stated circumstantial evidence is not only sufficient but may also be more certain, satisfying, and persuasive than direct evidence, and so I would submit here that we do have enough evidence before the court to find that there is at least an issue of material fact. The fact that the parties are both standing here today trying to submit to you evidence one way in our favor, one way in their favor, is evidence of an issue of material fact. All right. Thank you. All right. Thank you to counsel. This completes the five cases we have for argument today. They, along with the non-orally argued cases, will be submitted to the panel, and we will get those decided in the interim. The panel will stand in recess until 9 a.m. tomorrow.